Filed 7/10/24; On remand

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIO RODRIGUEZ,<br><br>     Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | H049016<br>(Santa Clara County<br>Super. Ct. Nos. C1647395,<br>C1650275) |

This writ proceeding returns to us following reversal of our prior opinion and remand by the California Supreme Court. (See *Rodriguez v. Superior Court* (2023) 15 Cal.5th 472 (*Rodriguez*).)

In its decision, the California Supreme Court addressed "the limited issue of whether the interval between the filing of a certificate of restoration and the court's ruling on it is excluded from the maximum commitment time set by [Penal Code] section 1370[, subdivision] (c)(1).[1]" (*Rodriguez*, *supra*, 15 Cal.5th at p. 504.) The court concluded that the interval is included in the two-year maximum commitment time. (*Id*. at pp. 487,

---

[1] Unspecified statutory references are to the Penal Code.

517.) The Supreme Court elected not to address whether Rodriguez's maximum commitment time has been exceeded and, if so, the appropriate remedy. The Supreme Court remanded the matter to this court to consider those questions. (*Id*. at pp. 487, 517–518.)

For the reasons explained below, we decide that section 1370, subdivision (c)(1) (section 1370(c)(1))'s two-year limit may be tolled for continuances or other delays that occur at the defendant's behest. We further decide that the two-year maximum has not been reached in this matter.

## I. FACTS AND PROCEDURAL BACKGROUND

The Supreme Court's decision details the factual and procedural background. (See *Rodriguez*, *supra*, 15 Cal.5th at pp. 487–490.) We do not repeat previously stated background information and describe only that most relevant to the remanded questions.

### A. *Trial Court Proceedings*

In late 2016, the Santa Clara County District Attorney began prosecuting Rodriguez for several felonies (Nos. C1647395 & C1650275). Since then, the trial court has twice found Rodriguez incompetent to stand trial.

The parties agree that, for the purposes of section 1370(c)(1), Rodriguez's first commitment to the State Department of State Hospitals (Department) totaled 119 days, calculated from the date of the trial court's commitment order (May 24, 2018) to the court's approval of the medical director's September 7, 2018 certificate of restoration to competence (September 20, 2018).[2]

---

[2] We accept the parties' agreement that, for the purposes of calculating the "commitment" period under section 1370(c)(1), Rodriguez's two incompetency commitments began on the date of the trial court's commitment orders. (See *Rodriguez*, *supra*, 15 Cal.5th at pp. 502, fn. 10, 510–511.)

2

Several months later, the trial court for a second time found Rodriguez incompetent to stand trial. On May 16, 2019, the court again committed Rodriguez to the Department. (*Rodriguez*, *supra*, 15 Cal.5th at p. 488.)

After treating Rodriguez, on January 9, 2020, the medical director of Atascadero State Hospital certified that Rodriguez was restored to competency. (*Rodriguez*, *supra*, 15 Cal.5th at p. 488.) The Department returned Rodriguez to the trial court on psychotropic medication " 'for his own personal benefit and to enable him to be certified' " as competent under section 1372. (*Ibid*.)

On January 24, 2020, the parties appeared before the trial court. Attorney Daniel Mayfield substituted as Rodriguez's newly assigned trial counsel. Mayfield requested a continuance of the hearing on Rodriguez's restoration to competence under section 1372 (restoration hearing). The court set the restoration hearing for May 21, 2020.

On March 4, 2020, Governor Gavin Newsom declared a state of emergency in response to the global outbreak of COVID-19. (*Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, 167.)

On March 17, 2020, because of Santa Clara County's COVID-19 " 'shelter in place orders,' " the Santa Clara County Superior Court suspended "all non-essential functions for three weeks [(to April 7, 2020)] or until such time as the order is lifted." The superior court did not include restoration hearings among the "essential functions" it would continue to perform during the suspension.

"On March 23, 2020, the Chief Justice issued an order pursuant to Government Code section 68115 explaining courts could not continue to operate and comply with the increasingly stringent social distancing measures. She ordered, inter alia, all jury trials suspended for 60 days." (*People v. Breceda* (2022) 76 Cal.App.5th 71, 82.)

The present record shows that from March 2020 through April 2021, both the Chief Justice and the presiding judge of the Santa Clara County Superior Court issued several emergency orders extending certain statutory deadlines to commence trials and

3

other judicial matters under Government Code section 68115.  None of the orders expressly addressed section 1372 restoration hearings.

"As a result [of the suspension of proceedings due to COVID-19], the [restoration] hearing set for May 21 did not take place."  (*Rodriguez*, *supra*, 15 Cal.5th at p. 488.)

The parties next appeared in court on July 17, 2020.  The court set the restoration hearing for August 24, 2020, and an intervening court date for August 14, 2020.

On August 14, 2020, Mayfield informed the trial court that he had another matter set for August 24, 2020, in juvenile court "that would take precedence."  Mayfield suggested that Rodriguez's restoration hearing "go over one week" to August 31, 2020.  The assigned deputy district attorney requested a "slightly longer continuance," noting that she had recently received records from the defense and needed to review them.  Mayfield responded, "I'd love to go over longer.  I was just [] trying to be nice to the People.  I thought they wanted to go quickly."  The deputy district attorney suggested a continuance to the week of September 13 or 20.  Mayfield responded that he had another matter set for September 13, and that September 21 "would be great."  The court reset the restoration hearing for September 21, 2020, and set an intervening court date on August 28, 2020.[3]

---

[3] Our Supreme Court characterized this continuance as occurring "at the request of both parties."  (*Rodriguez*, *supra*, 15 Cal.5th at p. 489.)  However, a minute order for this proceeding notes that the district attorney requested the continuance.  In accord with the Supreme Court's characterization and given that Mayfield initially requested a continuance to August 31, 2020, we attribute the continuance time between August 24 and August 31 (i.e., seven days) to Rodriguez.  Because the deputy district attorney asked for a longer continuance than Rodriguez did initially, we attribute the remainder of the continuance time (i.e., 21 days, between August 31 and September 21) to the district attorney.

By August 28, 2020, the trial court had not yet received certain subpoenaed records from Atascadero State Hospital. Mayfield asked the court to reset the matter to September 11, 2020, for receipt of medical records.[4]

On September 8, 2020, during the call of the master criminal trial calendar, Santa Clara County Superior Court Judge Eric Geffon described the lack of available courtrooms for trials due to the COVID-19 pandemic.

On September 10, 2020, Mayfield e-mailed the deputy district attorney and stated that he (Mayfield) wished to continue the restoration hearing until at least September 28, 2020. The deputy district attorney informed Mayfield that the trial court had "already automatically continued" the restoration hearing to November 2, 2020.

On September 11, 2020, the trial court released subpoenaed records to Mayfield and set the next court date for November 2, 2020.

On September 29, 2020, the deputy district attorney met with Judge Geffon and "expressed the importance of locating an available courtroom to hear pending mental health cases." Judge Geffon informed the deputy district attorney that the Santa Clara County Superior Court "did not presently have the resources to conduct the hearings in these cases due to the COVID-19 pandemic and the limited trial capacity and backlog of criminal jury trials that had resulted therefrom."

No restoration hearing occurred on November 2, 2020. The trial court "subsequently continued the [restoration] hearing several times due to the 'pandemic and the [s]uperior [c]ourt's limited trial capacity.' " (*Rodriguez, supra*, 15 Cal.5th at p. 489.)

---

[4] This summary of the August 28, 2020 proceeding is based in part on a reporters' transcript recently submitted to this court by the district attorney with his supplemental briefing. Notwithstanding the district attorney's failure to file a separate motion under California Rules of Court, rule 8.252, we grant the district attorney's unopposed request for judicial notice of the August 28, 2020 reporter's transcript. (See Evid. Code, §§ 452, subd. (d), 459.)

On December 15, 2020, the deputy district attorney met again met with Judge Geffon regarding the superior court's pending section 1369 and 1372 hearings. The deputy district attorney expressed the importance of finding available courtrooms for the pending section 1372 restoration hearings. The deputy district attorney "was informed that all available courtroom resources were being used to hear time-not waived jury trials and that no additional resources were available due to the COVID-19 pandemic."

Eventually, the trial court set Rodriguez's restoration hearing for a date in mid-March 2021.

On March 8, 2021, Rodriguez filed an objection to "the proposed hearing on his alleged restoration to sanity under [section] 1372" and motion to dismiss the charges under section 1385 and a then-recent decision, *People v. Carr* (2021) 59 Cal.App.5th 1136 (*Carr*)[5] (motion to dismiss). Rodriguez contended he had been committed as incompetent for more than the two-year (730-day) maximum commitment period under section 1370(c)(1). He asserted that his first incompetency commitment lasted 119 days, and his second commitment totaled 670 days (calculated from the May 16, 2019 commitment order to the impending March 16, 2021 restoration hearing), for an aggregate commitment of 789 days.

On March 16, 2021, the trial court (Judge Geffon) held a hearing on Rodriguez's motion to dismiss. The court asked Mayfield about a "hypothetical" situation (based on "a relatively common set of facts") in which a defendant is returned to court with only 90 days left on the two-year limit and defense counsel contests the restoration to competency. The court explained that the typical tasks necessary to prepare for a restoration hearing (e.g., record collection and expert evaluations) "oftentimes will take

---

[5] In *Carr*, the court of appeal concluded that the time between the certificate of restoration and the trial court's determination on the certificate under section 1372 counts toward the defendant's commitment period. (See *Carr*, *supra*, 59 Cal.App.5th at pp. 1144–1145.) The opinion in *Carr* was filed on January 19, 2021.

more than the 90 days that's left." The court posited that if defense counsel were to declare a lack of readiness for the restoration hearing near the end of the remaining time, "the court has no choice but to send the case out with the lawyer who is telling the court they're not effective because they have not been able to prepare for that hearing."

Mayfield responded to the hypothetical by saying, "I think we deal with that problem all the time that I have had cases where my client demanded a speedy trial where I have come to court and I said, 'I'm not prepared on this case. This is a complicated matter. My client wants a speedy trial. I'm asking the court to find a date beyond the 60-day time limit that will work for everybody and to find good cause to go beyond that day.' " When the trial court noted that the competency statutes include neither a good cause exception nor a time-waiver provision, Mayfield invoked Code of Civil Procedure section 128.5 and "the court's right to control what happens in the courtroom." Mayfield added that, in his opinion, section 1370(c)(1)'s two-year time limit "can be knowingly and intelligently waived in some cases," including by defense counsel "for the client who is considered incompetent at that point." Furthermore, Mayfield conceded that under section 1387, a dismissal of the prosecution following the expiration of the two-year limit would cause "some prejudice to the People."[6]

The trial court denied Rodriguez's motion to dismiss. (*Rodriguez*, *supra*, 15 Cal.5th at p. 489.) The court noted its concern about the hypothetical situation it had described and reiterated its belief that courts "would be forced to send the case out for a restoration hearing when the [defendant's] lawyer is not ready." The court continued: "I

---

[6] "Although the text of section 1387 is 'hardly pellucid' [citation], it generally permits the prosecution to refile felony charges following dismissal only once. [Citation.] This limitation, known as the 'two-dismissal rule,' was enacted in 1975 in order to prevent harassment of defendants by repeated dismissal and refiling of charges, to limit prosecutorial forum shopping, and to protect defendants' speedy trial rights." (*Jackson v. Superior Court* (2017) 4 Cal.5th 96, 103 (*Jackson*).)

would love to get some guidance from a higher court that, in fact, a good cause continuance is allowed or a time waiver of some kind can be entered by the lawyer."

After the trial court denied the motion to dismiss, Mayfield requested a continuance of the restoration hearing and an order to obtain "Rodriguez's updated mental health records related to his recent placement on '24-hour hold' and 'suicide watch' while in county jail." (*Rodriguez*, *supra*, 15 Cal.5th at p. 489.) Upon Mayfield's request, the court continued the matter to April 13, 2021, "for further setting of the restoration hearing."

On March 23, 2021, Mayfield asked the trial court to stay the proceedings so Rodriguez could seek writ review. The court denied that request.

On April 13, 2021, Mayfield requested another continuance to May 4, 2021, for setting of the restoration hearing "in part because the [d]istrict [a]ttorney had issued [a subpoena] for the jail medical and psychological records of Mr. Rodriguez and [Mayfield] wanted to review what had been turned over before [he] set the restoration hearing." The trial court granted the continuance.

### B. Writ Proceedings

On April 16, 2021, Rodriguez filed in this court a petition for a writ of prohibition or other equitable relief (petition). He asked this court to stay the competency restoration proceedings and direct the trial court to grant his motion to dismiss.

On April 28, 2021, this court stayed all proceedings in the trial court and requested that the People (real party in interest represented by the district attorney) file a preliminary opposition to the petition. In July 2021, this court issued an order to show cause why a peremptory writ should not issue, as requested by Rodriguez. In August 2021, the district attorney filed a return to the order to show cause, and Rodriguez filed a denial to the return.

On October 20, 2021, this court issued a published opinion deciding that Rodriguez's incompetency commitment ended when the certification of restoration to

8

competency was filed (on January 9, 2020) and, thus, the two-year maximum commitment period had not yet expired. (See *Rodriguez v. Superior Court* (2021) 70 Cal.App.5th 628, 635–636, revd. and remanded, *Rodriguez*, *supra*, 15 Cal.5th 472.) Our opinion vacated our stay and directed that the opinion would be final in seven days.

On October 21, 2021, Rodriguez filed a motion asking this court to reset the finality date to "at least 30 days, but at a minimum 20 days" "to avoid the mooting of issues and frustration of the relief granted, while promoting the interests of justice and assuring that petitioner receives effective assistance of counsel." The district attorney took no position on the motion.

On October 26, 2021, this court granted Rodriguez's motion and modified the opinion to delete the finality provision.

On November 9, 2021, Rodriguez filed a petition for rehearing, request for judicial notice, and motion to stay the trial court proceedings pending issuance of the remittitur.

On November 15, 2021, this court denied the requested rehearing, judicial notice, and stay.

On November 29, 2021, our decision became final and our stay was vacated.

On December 6, 2021, Rodriguez filed a petition for review and request for a stay in the California Supreme Court. (See docket, No. S272129.)

On January 5, 2022, the Supreme Court granted review and issued a stay of the trial court proceedings. (See *Rodriguez*, *supra*, 15 Cal.5th at pp. 490, 518, fn. 22.) The stay order read: "All further proceedings in *People v. Mario Rodriguez*, Santa Clara County Superior Court Nos. C1647395 and C1650275, are hereby stayed pending further order of this court." (See docket, No. S272129.)

On December 14, 2023, the Supreme Court issued its decision reversing this court and remanding the matter for further proceedings. (*Rodriguez*, *supra*, 15 Cal.5th at pp. 518–519.) Our high court's decision did not state whether its stay of the trial court proceedings would remain in effect pending this court's decision on remand.

9

On January 17, 2024, the Supreme Court issued its remittitur. The remittitur did not mention the Supreme Court's January 5, 2022 stay order.

On January 17, 2024, we directed the parties to file supplemental briefing addressing the questions remanded for our consideration.

That same day, Rodriguez filed a motion for a stay of this writ proceeding and a limited remand to the trial court. He also moved for leave to supplement the exhibits supporting his petition. Rodriguez's newly proffered exhibits comprise an educational assessment conducted when he was in high school, a declaration of writ counsel's paralegal concerning his review of Rodriguez's medical records from "Santa Clara Valley Medical Center and the [State] Department of State Hospitals," and a declaration of trial counsel Mayfield averring that "Rodriguez has not been restored to competence" and the defense is "ready to proceed to restoration trial immediately upon return to the superior court." Mayfield's declaration also attaches expert reports evaluating Rodriguez's mental health and defense investigator reports.

Regarding his request to supplement the petition exhibits, Rodriguez claims that the new exhibits "document that [he] has remained mentally ill and incompetent for much of his life, including over the last three years."[7] Rodriguez further asserts that these exhibits will allow this court to "better address the violations of [his] statutory and constitutional rights" and are necessary for a complete record on which to decide "the statutory and constitutional questions implicated by tolling of the commitment period" (boldface & capitalization omitted).

---

[7] In a January 4, 2022 expert report, Dr. Leonard J. Donk concludes, inter alia, "despite hospitalization, therapies and programs at the hospitals, and the medications Abilify and Buspar, Mr. Rodriguez fixedly remains, at core, paranoidly delusional about others' intentions toward him, about the inability of his attorneys, as professional as they may be, not being able to fully understand him [*sic*], and about the rightness of his tactics in dealing with the courts even though these professional attorneys have told him that this is not the way to do it."

10

On January 23, 2024, the district attorney filed an opposition to Rodriguez's January 17, 2024 motion.

On February 1, 2024, we issued an order deferring ruling on Rodriguez's motion pending our consideration of it with the merits of the remanded questions. Additionally, because our Supreme Court did not address its January 5, 2022 stay order in its opinion or remittitur, we said the following in our February 1, 2024 order: "The trial court proceedings in Santa Clara County Superior Court Nos. C1647395 and C1650275 are not stayed."[8] (Cal. Rules of Court, rules 8.272(b)–(d), 8.490(d), 8.540.)

On April 2, 2024, Rodriguez filed a request for judicial notice and supplementation of the exhibits supporting his petition and supplemental answering brief. The supplemental documents include a printout of the trial court's online docket/case information (listing case events through March 25, 2024), this court's online docket/register of actions through February 27, 2024, and a reporter's transcript of a trial court proceeding held on February 5, 2024.

The February 5, 2024 reporter's transcript shows that trial counsel Mayfield asked the trial court to set dates for the restoration hearing and estimated that the hearing would take "four days." The deputy district attorney stated that the People were "ready and hoping to set the soonest possible date." The trial court "offered March 19th, 20th, and 21st" for the restoration hearing. Mayfield said that his expert witnesses would not be

---

[8] Regarding the effect of a remittitur, our Supreme Court has explained that " 'as a general rule, [it] cannot exercise any jurisdiction over a cause in which the remittitur has been issued by its order and filed in the [c]ourt below.' " (*In re McGee* (1951) 37 Cal.2d 6, 9; see also *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5 ["The appellate court clerk's issuance of the remittitur effects the transfer of jurisdiction to the lower court. [Citation.] The reviewing 'court has no appellate jurisdiction over its own judgments, and it cannot review or modify them after the cause has once passed from its control by the issuance of the remittitur' [citation], although in very limited circumstances the remittitur may be recalled."]; *Gallenkamp v. Superior Court* (1990) 221 Cal.App.3d 1, 10.)

ready to proceed by those dates because the defense had just received additional records. The court offered April 9 through 11, 2024, for the hearing, and Mayfield accepted those dates.

After receiving the parties' supplemental briefing on remand, we set this matter for oral argument.

Thereafter, on April 16, 2024, the trial court sent a letter to this court requesting guidance on how to proceed in this matter. The trial court included with its letter a copy of a reporter's transcript for a proceeding held on April 10, 2024.[9]

In its letter, the trial court explained that Mayfield had "objected that the trial court would be in excess of jurisdiction to hear the trial on restoration because the maximum two-year commitment period has expired. [Mayfield] asked the court to preserve the defense objection but proceed forward anyway, noting on the record that the issue of the two-year maximum commitment period is pending before [this] court." The trial court "questioned how it could proceed forward to trial [on the restoration certificate] without first determining whether holding the trial would be in excess of its jurisdiction" and "how to proceed after a decision on the issue of restoration because subsequent proceedings are dependent on whether the two-year maximum commitment period has expired."

At the April 10, 2024 proceeding, the district attorney urged the trial court to "maintain the status quo" pending this court's decision on remand from the Supreme Court. The trial court noted that both parties were ready to proceed on the section 1372 restoration hearing. Nonetheless, the court declared that it was "not prepared to go

---

[9] The trial court sent a copy of its April 16, 2024 letter to counsel for the parties in the trial court proceeding and this writ proceeding. At oral argument in this writ proceeding, neither party objected to this court taking judicial notice of the trial court's letter. On our own motion we take judicial notice of the trial court's letter and the reporter's transcript of the April 10, 2024 trial court proceeding. (Evid. Code, §§ 452, subd. (d), 459.)

12

forward today." Given its uncertainty about how to proceed, the trial court continued the matter to April 23 for the restoration hearing and stated its intent to "send a clarification letter" to this court.

In its April 16 letter, the trial court asked this court for "guidance" on the following questions: (1) "Is the trial court to assume at this stage that it is not in excess of jurisdiction to hold a court trial on the issue of restoration of competency?" and (2) "[D]epending on the trial court's decision [on the restoration issue], is the trial court to assume at this stage that it is not in excess of jurisdiction to proceed either with the reinstatement of criminal proceedings or placement for continued treatment?"

In response, we issued an order declining to answer the trial court's questions "because such response would constitute an improper advisory opinion." We also stated that our order was "without prejudice to petitioner or real party in interest requesting from this court a temporary stay of the trial court proceedings."

Neither party has requested a stay from this court. Furthermore, our record does not include information about any further proceedings occurring in the trial court.

### 1. Orders on Pending Motions/Requests

Having now considered Rodriguez's January 17, 2024 motion, we grant Rodriguez's request for leave to supplement the exhibits supporting his petition. We direct our court clerk to file the exhibits numbered 11, 12, and 13. Additionally, we deny Rodriguez's motion to stay this writ proceeding and remand the matter to the trial court. Rodriguez has not demonstrated that a stay and remand are necessary to our consideration of the remanded issues.

We grant Rodriguez's unopposed April 2, 2024 request for judicial notice and supplementation of the petition exhibits. We direct our court clerk to file exhibit Nos. 14, 15, and 16. (See Evid. Code, §§ 452, subd. (d), 459.)

13

## II.  DISCUSSION

In *Rodriguez*, the Supreme Court held that the period between the filing of the certificate of restoration and the committing court's ruling on that certificate "is not excluded from the two-year limit" under section 1370(c)(1).  (*Rodriguez, supra*, 15 Cal.5th at p. 487.)

The Supreme Court directed us to consider on these facts two questions that follow from that conclusion:

(1) "[W]hether the two-year limit of section 1370(c)(1) was exceeded in this case.  To answer that question, the court may consider whether good cause continuances can toll the limit of section 1370(c)(1)."  (*Rodriguez, supra*, 15 Cal.5th at p. 518.)

(2) "If the court finds that the two-year statutory period has indeed been exceeded, it shall further consider the nature of the remedy Rodriguez is entitled to at this point.  In particular, the court should examine whether Rodriguez is entitled to dismissal of the charges pending against him or whether other relief is appropriate."  (*Rodriguez, supra*, 15 Cal.5th at p. 518.)

For reasons we will explain, we decide that the two-year limit may be tolled by delays attributable to the defense.  Having carefully examined the record and determined which delays are attributable to the defense, we conclude the maximum commitment period has not been exceeded in this case.  Consequently, we do not address the appropriate remedy had the two-year limit been exceeded.

### A.  *Two-year Limit Under Section 1370(c)(1)*

#### 1.  The Parties' Contentions

Rodriguez contends section 1370(c)(1)'s two-year limit was exceeded before the trial court denied his motion to dismiss on March 16, 2021.  He asserts "the commitment period limits jurisdiction" and cannot be extended for good cause, waived, or tolled for any reason.

Rodriguez argues variously that "[t]olling the limitations period based on 'good cause' is antithetical to the idea of quickly ending commitments to avoid violation of the [constitutionally prescribed] rule of reasonableness"; "there are no essential judicial functions that justify tolling of the commitment period because" certain subdivisions in sections 1370 and 1372 "incorporate one another"; "[t]he 'commitment period' cannot simply be qualified as the 'tolled commitment period' without statutory authorization"; "the limitation on the commitment period must be strictly marked for various deadlines to prevent the violation of constitutional rights"; "there is no basis for tolling because charges may be refiled"; "tolling would unravel more than a century of legislative and constitutional progress toward the elimination of unnecessary detention time for persons committed as [incompetent], which was the chief evil motivating the reduction of the limitation period to two years"; retroactive tolling "would violate the special jurisdiction authorized for competency proceedings" and be unfair due to a lack of prior notice; applying tolling to the competency proceedings violates equal protection and due process by treating a committed person like a convicted person involved in other proceedings for which the Legislature has permitted tolling; and "all delay is detrimental to the [committed] person, so the courts must enforce, 'set firm limits on the scheduling of trial,' for the sake of protecting the constitutional rights of the committed person." Rodriguez further contends that "[t]he time spent on writ review cannot be held against [him] given that he succeeded in obtaining reversal."

The district attorney counters that the application of good-cause tolling is dispositive of whether the two-year limit has been exceeded in this case. The district attorney asserts that "statutory and judicially created rules of equity lawfully can and should be applied to toll section 1370, subdivision (c)(1)'s two-year limit to prevent an unjustified bar to a hearing on the merits."

The district attorney compares the two-year limit and related restoration hearing to a defendant's statutory right to a speedy trial: "Given the similarity and gravity of the

15

statutory and constitutional protections at issue in sections 1382 [governing speedy trials] and 1370 et seq. for defendants the law presumes competent, there is no logical reason to presume that the rules the Legislature defined for good cause continuances in criminal jury trials and all other criminal matters (see § 1050), rules which act to 'reset' or otherwise extend the statutory period for trial, should not be implied in section 1370 to create a fair and workable procedure for ensuring that the parties can litigate the merits." The district attorney further contends the two-year maximum is not a constitutional limit and the application of tolling based on a good cause continuance does not violate Rodriguez's due process rights. Additionally, the district attorney asserts that this court has inherent equitable power to toll the two-year limitation in this case because the elements of equitable tolling have been met.

The district attorney contends that if good cause or equitable tolling is applied to the delays resulting from Rodriguez's requests to postpone the restoration hearing and the pandemic's extraordinary effects on court operations, Rodriguez's total incompetency commitment amounts to just over one year—well below the two-year maximum.

2. Section 1370(c)(1)'s Two-year Limit May Be Tolled and Has Not Been Exceeded

a. Tolling Pending a Restoration Hearing

" '[T]he incompetence program . . . is a special form of pretrial detention' whose 'purpose is restoration of a specific mental state without which the criminal process cannot proceed.' [Citation.] In adopting the 'incompetence program' in 1974, the Legislature clearly intended to limit a defendant's time in 'pretrial detention' and to suspend 'the criminal process' so that the defendant can be restored to 'a specific mental state.' [Citations.] The Legislature also intended to 'eliminate uncertainty among all persons concerned regarding court procedures.' [Citation.] This latter goal of providing certainty is evident in the Legislature's decision to limit the maximum term of commitment to three years (and later two), rather than the 'reasonable period of time'

16

mandated under [*In re Davis* (1973) 8 Cal.3d 798] and *Jackson v. Indiana* [(1972) 406 U.S. 715].  [Citations.]  As [] explained in *Jackson v. Superior Court*, 'the Legislature established the [then] three-year maximum in section 1370(c) to protect defendants' due process and equal protection rights not to be committed solely because of incompetence for longer than is reasonable.' "  (*Rodriguez, supra*, 15 Cal.5th at pp. 505–506.)

As relevant here, a defendant who has been committed for treatment upon a finding of incompetency will be returned to the committing court when "the designated medical professional finds that the defendant's competency has been restored" and "files a certificate of restoration."  (*Rodriguez, supra*, 15 Cal.5th at p. 496; see also §§ 1370, subd. (a)(1)(C), 1372.)  "Following the defendant's return, the court holds a hearing to determine whether to approve or reject the certificate."  (*Rodriguez*, at p. 496.)  If the court approves the certificate (i.e., finds the defendant has "recovered competence" (§ 1372, subd. (c)(1)), the incompetency commitment period ends.  (See *Rodriguez*, at p. 518.)

"Although section 1372 refers to a 'hearing on the defendant's competence' [(i.e., the restoration hearing)] (§ 1372, subd. (c)(1)), it does not 'set forth any . . . procedures' for such a hearing."  (*Rodriguez, supra*, 15 Cal.5th at p. 495.)  Nevertheless, our Supreme Court has held that " 'section 1372 allows its gaps to be filled by Penal Code section 1369,' which establishes the procedures for the initial hearing on the issue of a defendant's mental competence.  [Citation.]  Thus, when a defendant returns to court after a certificate of restoration has been filed, the defendant is presumed competent and bears the burden of proving otherwise at a hearing.  [Citation.]  'If the committing court approves the certificate of restoration' (§ 1372, subd. (d)) — thus finding the defendant has recovered competency — criminal proceedings resume (§ 1370, subd. (a)(1)(A)) . . . .  The court may, however, 'reject[] a certificate of restoration' based on a medical evaluation (§ 1372, subd. (c)(2)), at which point a defendant may be returned to a

17

treatment facility if the maximum commitment period has not yet been reached." (*Ibid.*; see also § 1372, subd. (c)(2) [added by Stats. 2022, ch. 47, § 45, eff. June 30, 2022].[10])

In the present case, Rodriguez did not request a formal restoration hearing on the first certificate of restoration filed in 2018.  Rather, upon his return to the trial court in September 2018, Rodriguez submitted the competency question on the examiners' reports.  The court found Rodriguez competent, approved the certificate, and reinstated the criminal proceedings.  Rodriguez's first commitment totaled 119 days (three months, 27 days).

By contrast, when Rodriguez returned to the trial court on January 24, 2020, with a certificate of restoration (following his second course of treatment at a state hospital facility), his newly assigned trial counsel contested the certificate, asked for a formal restoration hearing, and, further, requested a four-month continuance of the hearing to May 21, 2020.  By that point, Rodriguez's second commitment had lasted 253 days (from May 16, 2019, to January 24, 2020), for a total commitment period of 372 days (119 days + 253 days; 12 months, 1 week, and 5 days).  In other words, when trial counsel asked for

---

[10] Section 1372, subdivision (c)(2) provides:  "If the court rejects a certificate of restoration, the court shall base its rejection on a written report of an evaluation, conducted by a licensed psychologist or psychiatrist, that the defendant is not competent. The evaluation shall be conducted after the certificate of restoration is filed with the committing court and in compliance with [s]ection 1369.  A copy of the written report shall be provided to the [D]epartment pursuant to paragraph (3) of subdivision (a) of [s]ection 1370.  The court shall also provide a copy of the court order or minute order rejecting the certification of restoration to the [D]epartment, pursuant to clause (ii) of subparagraph (C) of paragraph (3) of subdivision (a) of [s]ection 1370, including any minute orders continuing the hearing for the court's determination."

In turn, section 1370, subdivision (a)(3)(C)(ii) states:  "If a certificate of restoration of competency was filed with the court pursuant to [s]ection 1372 and the court subsequently rejected the certification, a copy of the court order or minute order rejecting the certification shall be provided.  The court order shall include a new computation or statement setting forth the amount of credit for time served, if any, to be deducted from the defendant's maximum term of commitment based on the court's rejection of the certification."  (Added by Stats. 2022, ch. 47, § 43, eff. June 30, 2022.)

a contested hearing on the January 2020 certificate, 358 days remained of the two-year (730-day) maximum commitment period under section 1370(c)(1).

On and after January 24, 2020, Rodriguez (through his trial counsel) requested in the trial court several continuances of the restoration hearing, including a continuance from January 24, 2020, to May 21, 2020; a continuance from August 24, 2020, to August 31, 2020; and continuances from March 16, 2021, to May 4, 2021. The record indicates that trial counsel sought the requests primarily to collect documents pertaining to Rodriguez in preparation for the restoration hearing.

Rodriguez (through his separate writ counsel) has litigated this writ proceeding in this court and in the Supreme Court since April 16, 2021, requesting stays of the trial court proceedings from this court and the Supreme Court. Further, Rodriguez has asserted throughout the writ litigation that the two-year limit expired in January 2021 (when, without any tolling, his total commitment period reached the 730-day maximum) and the trial court has lacked jurisdiction to hold a restoration hearing since that date. Consistent with that assertion, Rodriguez recently objected on jurisdictional grounds in the trial court. At a proceeding on April 10, 2024, Rodriguez's trial counsel argued that the trial court would be acting in excess of its jurisdiction were it to hold a restoration hearing, notwithstanding trial counsel's stated desire to proceed with a hearing. In other words, since the Supreme Court issued it opinion in this case, Rodriguez has both asked the trial court to hold a restoration hearing to demonstrate Rodriguez's lack of competency and objected on jurisdictional grounds to the court holding that hearing.

Turning first to the question of jurisdiction, we do not agree with Rodriguez that section 1370(c)(1)'s two-year limit implicates the trial court's fundamental jurisdiction. " 'A lack of fundamental jurisdiction is " ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' " ' [Citation.] Because a lack of fundamental jurisdiction implicates 'the basic power of a court to act,' courts must enforce jurisdictional limitations even if considerations of

19

waiver, estoppel, consent, or forfeiture might otherwise excuse a party's failure to comply with them.  [Citations.]  In other words, when a party fails to comply with a jurisdictional time bar, the court has no choice but to dismiss the case for lack of jurisdiction, even if equitable concerns would support reaching the merits."  (*Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 949–950 (*Law Finance Group*).)

"Because of those harsh consequences, [courts] apply a 'presumption that statutes do not limit the courts' fundamental jurisdiction absent a clear indication of legislative intent to do so.'  [Citations.]  This approach reflects ' "a preference for the resolution of litigation and the underlying conflicts on their merits by the judiciary." '  [Citation.]  To be sure, mandatory procedural rules — like many statutes of limitations or other filing deadlines — serve important policy goals, and courts must enforce them when properly raised.  [Citation.]  But we will not assume that the Legislature intended to imbue a time bar with jurisdictional consequences merely because the statute speaks in mandatory terms; . . . 'jurisdictional rules are mandatory, but mandatory rules are not necessarily jurisdictional.' "  (*Law Finance Group*, *supra*, 14 Cal.5th at p. 950.)

Here, it is indisputable that when the Department returned Rodriguez to the trial court with a certificate of restoration, the court had the statutory authority to hold a section 1372 restoration hearing.  (*Rodriguez*, *supra*, 15 Cal.5th at p. 496 ["Following the defendant's return, the court holds a hearing to determine whether to approve or reject the certificate.  (See § 1372.)"].)  Additionally, section 1372 does not set forth any specific procedures directed at a circumstance in which section 1370(c)(1)'s two-year limit is reached before the trial court makes its determination on the restoration certificate.  Section 1370(c)(1) similarly does not provide for procedures applicable to defendants

like Rodriguez who have received a certificate of restoration and are returned to the committing court before two years has expired.[11]

By contrast, section 1370 sets forth "[d]ifferent procedures [that] apply if the maximum commitment term has been reached. . . . If the defendant has not regained competency, the statute does not provide for a hearing to redetermine a defendant's competency at this point. [Citations.] Instead, section 1370 directs the committing court to 'initiate conservatorship proceedings for the defendant' if 'it appears to the court that the defendant is gravely disabled.' " (*Rodriguez*, *supra*, 15 Cal.5th at p. 495; see also *id.* at pp. 493–494; § 1370, subd. (c)(3).[12]) "If the defendant is not gravely disabled, the defendant must be released [citation], and the trial court may dismiss the action in the interest of justice pursuant to section 1385 [citations]. Such a dismissal is 'without prejudice to the initiation of any proceedings that may be appropriate' under the LPS Act." (*Jackson*, *supra*, 4 Cal.5th at p. 102.)

In other words, the competency scheme does not specifically provide procedures that should occur if a defendant has been certified as restored to competency and returned to the committing court but does not receive a restoration hearing before the maximum

---

[11] Section 1370(c)(1) states in relevant part: "At the end of two years from the date of commitment . . . but no later than 90 days prior to the expiration of the defendant's term of commitment, a defendant who has not recovered mental competence shall be returned to the committing court, and custody of the defendant shall be transferred without delay to the committing county and shall remain with the county until further order of the court. The court shall not order the defendant returned to the custody of the State Department of State Hospitals under the same commitment."

[12] Section 1370, subdivision (c)(3) states in relevant part: "Whenever a defendant is returned to the court pursuant to paragraph (1) or (4) of subdivision (b) or paragraph (1) of this subdivision and it appears to the court that the defendant is gravely disabled, as defined [by certain provisions] of the Welfare and Institutions Code, the court shall order the conservatorship investigator of the county of commitment of the defendant to initiate conservatorship proceedings for the defendant pursuant to [the Lanterman–Petris–Short (LPS) Act]."

21

commitment period has been reached. The competency scheme, however, *does* address the procedures that should occur if the defendant has not regained competency.

Under none of the possible scenarios does the competency scheme mandate the dismissal of the criminal action. (See § 1370, subd. (d); *People v. Waterman* (1986) 42 Cal.3d 565, 568, fn. 1.) Thus, even if a defendant reaches the two-year maximum without regaining competency, the trial court is not required by the competency statutes to dismiss the prosecution, though it may do so under section 1385. (See § 1370, subd. (d).)

In the absence of a clear statement by our Legislature that the trial court loses power over the criminal action if it fails to approve or reject a certificate of restoration under section 1372 before section 1370(c)(1)'s two-year limit has run, we apply the usual presumption to conclude that the two-year statutory maximum does not limit the courts' fundamental jurisdiction over the prosecution itself. (See *Law Finance Group*, *supra*, 14 Cal.5th at p. 950, quoting *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 808; see also *People v. Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 66 ["conclud[ing] that the failure to comply with the mandate of section 1368 does not effect a fundamental loss of jurisdiction"].)

Having discerned no legislative intent to limit the trial courts' fundamental jurisdiction over the criminal action if the two-year limit is reached pending a section 1372 restoration hearing, we turn to whether the Legislature intended—as Rodriguez asserts—to preclude the trial court from applying equitable doctrines like tolling and estoppel to the calculation of the section 1370(c)(1) commitment period. (See *Law Finance Group*, *supra*, 14 Cal.5th at p. 952.)

Our Supreme Court has "explained that the tolling doctrine derives from the courts' inherent equitable powers, not from a delegation of authority by the Legislature in a particular statute. [Citation.] This equitable power forms ' "part of the established backdrop of American law," ' and we assume that the Legislature understands this

22

background principle when drafting statutory deadlines. [Citation.] Accordingly, we presume that a statutory limitations period is subject to equitable tolling. [Citation.] Much like the presumption that a filing deadline is nonjurisdictional, the presumption that a deadline permits tolling and other forms of equitable relief is rebuttable: An examination of the 'explicit statutory language' or the 'manifest policy underlying a statute' may demonstrate that the Legislature intended to reverse the usual rule. [Citation.] We have applied a similar presumption in assessing whether the Legislature intended to preclude courts from applying equitable estoppel. In that context, we held that ' "courts should not presume the Legislature intended 'to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' " ' " (*Law Finance Group*, *supra*, 14 Cal.5th at pp. 952–953.)

In the same vein, "[t]he jurisdiction to hear and determine a cause or proceeding involves the power to postpone for good cause the time of hearing, unless prohibited by positive law." (*Curtis v. Underwood* (1894) 101 Cal. 661, 669.) Additionally, "courts have fundamental inherent equity, supervisory and administrative powers, as well as inherent power to control litigation before them" (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967), including the power to exercise reasonable control over all proceedings connected with pending litigation to ensure the orderly administration of justice. (*Ibid*.; see also *Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 863; *Addison v. State* (1978) 21 Cal.3d 313, 318–319 [Courts are " 'not powerless to formulate rules of procedure where justice demands it.' "].) "Inherent powers of the court are derived from the state Constitution and are not confined by or dependent on statute." (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1377.) The court's inherent power applies if the procedure is not specified by statute or by rules adopted by the Judicial Council. (*First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 334.) Put conversely, "when a statute or rule of court provides an applicable procedure, a

23

trial court may neither substitute a procedure it has itself devised nor adopt an existing procedural provision that is inapplicable to the case before it." (*Weiss*, at p. 864.)

Our state's competency statutes do not address whether the running of the two-year maximum under section 1370(c)(1) can be paused during the period after the defendant returns to court with a restoration certificate and before the trial court decides whether to accept or reject the certificate under section 1372.[13] If the Legislature had intended to preclude any pause in the running of the commitment period due to delays in holding the restoration hearing, "it could have done so expressly." (*Law Finance Group*, *supra*, 14 Cal.5th at p. 953.) Rather than explicitly precluding pauses in the two-year limit, our Legislature acknowledged in section 1372 itself that continuances of the restoration hearing are likely to occur. (See § 1372, subd. (c)(2) [directing the court to provide the Department "any minute orders continuing" the restoration hearing if the court rejects the certificate]; § 1370, subd. (a)(3)(C)(ii).) This acknowledgment suggests that continuances of the restoration hearing can affect the running of the two-year time limit. (See, e.g., *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 633–634 [authority to continue the permanency planning hearing implies power to continue reunification efforts beyond statutory limit].)

Furthermore, the legislative policy reflected in the competency statutes is not inconsistent with pausing section 1370(c)(1)'s two-year limit. As the *Rodriguez* court explained, our state's competency statutes "aim[] to expedite" the provision of treatment (*Rodriguez*, *supra*, 15 Cal.5th at p. 507) and, "in imposing the two-year limit," our Legislature intended "to eliminate the uncertainty inherent in the 'reasonable period of time' standard under *Davis* and *Jackson v. Indiana* and ensure that individuals who may never regain competence are not indefinitely detained with the criminal process suspended." (*Id*. at p. 506.) The court also explained that "urgency in reaching a

---

[13] Neither do our court rules. (See Cal. Rules of Court, rule 4.130.)

determination of competency" at a restoration hearing is important to ensuring that defendants do not "remain in [a] state of limbo" after the certificate of restoration is filed but before the committing court adjudicates the defendant competent. (*Ibid.*; see also *id*. at p. 515 [acknowledging that courts can take into consideration whether a defense continuance request has been made "for the sole purpose of exhausting the two-year period"].)

Notwithstanding the intent of our competency statutes to ensure timely provision of treatment to defendants and speedy determinations regarding their competency, "the Legislature has vested courts with responsibility for overseeing the progress of defendants committed for the purpose of restoring their competency" (*Rodriguez*, *supra*, 15 Cal.5th at p. 509) and has made the restoration hearing a crucial part of our competency scheme. (See *id*. at p. 497 ["the crucial competency assessments before and after the filing of the certificate of restoration require *judicial* action and approval"]; *id*. at p. 508, fn. 14.)

If the committing court rejects the certificate of restoration under section 1372 and the maximum commitment period has not been reached, the court may order the defendant recommitted for further treatment. (*Rodriguez*, *supra*, 15 Cal.5th at p. 495.) On the other hand, if the court approves the certification of restoration, "criminal proceedings resume." (*Ibid*.) The former path provides protection against the trial of an incompetent defendant. The latter accords with the important governmental "interest in bringing to trial an individual accused of a serious crime." (*Sell v. United States* (2003) 539 U.S. 166, 180; see *Illinois v. Allen* (1970) 397 U.S. 337, 347 (conc. opn. of Brennan, J.) ["Constitutional power to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace."].)

The importance of the restoration hearing to our competency scheme must be considered in conjunction with the defendant's interest in representation by counsel who is sufficiently prepared to challenge the restoration certificate, if counsel's investigation

leads to a conclusion that that course of action is appropriate. "A defendant has the right to assistance of counsel in proceedings to determine his competence to stand trial." (*People v. Robinson* (2007) 151 Cal.App.4th 606, 612.) "To constitute effective assistance 'adequate investigation and preparation' by counsel must be undertaken." (*People v. Lyon* (1996) 49 Cal.App.4th 1521, 1526.) "[A] trial court may not exercise its discretion over continuances so as to deprive the defendant or his attorneys of a reasonable opportunity to prepare." (*People v. Snow* (2003) 30 Cal.4th 43, 70; see also *Townsend v. Superior Court* (1975) 15 Cal.3d 774, 782 [trial court "must carefully navigate procedurally between 'the Scylla of delay and the Charybdis of ineffective and inadequate representation' "].) "To force an unprepared counsel to proceed to trial regardless of the reasons for the lack of preparedness would result in a violation of constitutional rights." (*Hughes v. Superior Court* (1980) 106 Cal.App.3d 1, 4.)

Permitting a pause in section 1370(c)(1)'s two-year limit for a defense-requested continuance ensures that a committing court is not compelled to hold a restoration hearing before defense counsel has sufficient time to prepare to meet the burden of proving the defendant's incompetence. Such a pause is consistent with the many considerations that are balanced in competency matters (see *McKneely v. Superior Court* (2023) 91 Cal.App.5th 1232, 1246) and the specific interests at stake in a committing court's determination of a defendant's restoration to competency under section 1372.

In sum, neither section 1370(c)(1) nor section 1372 expressly prohibits a committing court from pausing the two-year time limit pending the restoration hearing. Turning to legislative intent, we fail to see how allowing for pauses that may benefit the defendant in challenging the restoration certificate would be inconsistent with the legislative policy advanced by the competency scheme.

We recognize that section 1370(c)(1)'s two-year limit is designed to " 'protect defendants' due process and equal protection rights not to be committed solely because of incompetence for longer than is reasonable' " (*Rodriguez, supra*, 15 Cal.5th at p. 506).

26

Nevertheless, we do not believe that this principle precludes accounting for pauses that occur at the behest of the defendant. The two-year limit is akin to the speedy trial right, whose purpose is "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." (*Barker v. Wingo* (1972) 407 U.S. 514, 532.) Both time limits protect similar defendant-centric interests.

In the absence of specific statutory guidance, we conclude it is appropriate to apply longstanding principles drawn from the speedy trial context regarding the effect of delay on the running of the section 1370(c)(1) time limit. (See *Camacho v. Superior Court* (2023) 15 Cal.5th 354, 385 (*Camacho*) ["In general, delays sought by the defendant's counsel weigh against the defendant's claim of a speedy trial violation."]; *id.* at p. 393 [concluding that petitioner failed to show a violation of his due process right to a timely trial when only "the length of the delay" strongly supported his claim]; *id.* at p. 394 [and "the defense, rather than the state, [bore] more responsibility for the delay"]; see also *People v. Carter* (2024) 15 Cal.5th 1092, 1100 [applying speedy trial principles to assessing trial delay under the Sexually Violent Predator Act and stating " 'delays sought by the defendant's counsel weigh against the defendant's claim of a speedy trial violation' "]; *Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108, 1124 [Under section 1382, "delay caused by the conduct of the defendant constitutes good cause to deny his motion to dismiss [for speedy trial violation]. Delay for defendant's benefit also constitutes good cause."].)

We discern no unfairness due to alleged lack of notice or any other constitutional violation in applying tolling for delays sought by defense counsel when calculating Rodriguez's commitment period after his return to the trial court. Before *Carr*, *supra*, 59 Cal.App.5th 1136 was decided in January 2021, the parties and trial court seemingly acted with the understanding that section 1370(c)(1)'s two-year period was not running in the period between Rodriguez's return to court and the restoration hearing. After *Carr*,

27

Rodriguez's trial counsel acknowledged the potential application of good cause pauses to ensure that a defendant's counsel can adequately prepare for a requested restoration hearing. The tolling issue, likewise, has been a subject of briefing and dispute in this writ proceeding. (See *Rodriguez*, *supra*, 15 Cal.5th at p. 518, fn. 21.) Under these circumstances, the application of tolling is not so unforeseeable as to deprive Rodriguez of fair warning.

Moreover, our conclusion regarding the application of tolling is not premised on statutes addressing competent persons previously convicted of crimes. We base our decision on the statutory scheme governing competency proceedings and a court's inherent authority to ensure the orderly administration of justice. We are thus unpersuaded by Rodriguez's argument that "[r]eading tolling provisions from [sexually violent predator] or [mentally disordered offender] proceedings into the [competency] statutory scheme [] violates equal protection and due process by treating the committed person – who has yet to be convicted – in 'an unequal manner.' "

For these reasons, we conclude that section 1370(c)(1)'s two-year limit may be tolled for continuances or other delays in holding the restoration hearing that occur at the defendant's behest. Nevertheless, we are mindful of "the Legislature's intent to limit the period of detention due to incompetency and provide certainty regarding the length of that detention period." (*Rodriguez*, *supra*, 15 Cal.5th at p. 506.) We decide that only delays attributable to Rodriguez—more specifically in this case, to his trial and writ counsel—should toll section 1370(c)(1)'s two-year limit.[14]

---

[14] There is no suggestion in the record that any delays requested by Rodriguez's counsel were caused by a "systemic 'breakdown' " of the appointed counsel system in Santa Clara County. (See *Vermont v. Brillon* (2009) 556 U.S. 81, 94 (*Brillon*).) We therefore do not consider whether such a scenario—if factually established—would result in a different assessment of any prehearing delay. Further, the parties have not suggested that the requests for additional time made by Rodriguez's counsel lacked good cause. As it is unnecessary to resolving this matter, we do not further analyze the good cause standard in the context of restoration hearings.

b. Application of Tolling in this Case

We turn now to a determination of whether the two-year limit has been exceeded in this case. To calculate delays attributable to Rodriguez, we decide that delays in the trial court that were initiated by his trial counsel should be attributed to Rodriguez. (See *Brillon*, *supra*, 556 U.S. at pp. 90–91 [deciding, under the Sixth Amendment right to a speedy trial, that delay caused by defense counsel is charged against the defendant]; see also *People v. Masterson* (1994) 8 Cal.4th 965, 974 [holding that defense counsel may waive a jury trial on the issue of competency and make other decisions regarding a jury trial, even over the defendant's objection].) Under the same rationale, we attribute the entire period of the writ litigation to Rodriguez. Rodriguez initially sought writ review in this court of the trial court's denial of his motion to dismiss and a stay of the trial court proceedings. When this court denied the writ (and shortened the period of finality to expedite the hearing in the trial court), Rodriguez's writ counsel moved this court to reset the finality date and sought review and a stay in the California Supreme Court. Since the matter was remanded from the Supreme Court to this court and we noted the trial court proceedings were no longer stayed, Rodriguez's trial counsel has contended the trial court lacks jurisdiction. Under those circumstances, we decide the entire period of writ review is attributable to Rodriguez's counsel and, therefore, to Rodriguez. (See *Camacho*, *supra*, 15 Cal.5th at p. 368 ["the ordinary rule is that delays sought by counsel are attributable to their clients"].)

By contrast, we conclude that delays initiated by the district attorney (or requested by the district attorney after an initial request by Rodriguez's trial counsel) are not attributable to Rodriguez. We also decide that delays initiated by the trial court (here, primarily in response to the COVID-19 pandemic) are not attributable to Rodriguez. (*Brillon*, *supra*, 556 U.S. at p. 90 [noting delay caused by " 'neutral reason[s],' " such as " 'overcrowded courts' " are attributable to the government].)

29

Using this rubric, we have attributed 292 days to the combined actions of the district attorney and the trial court after Rodriguez was returned to court on January 24, 2020. We attribute the rest of the time since Rodriguez's return to court to Rodriguez. Excluding the days attributable to Rodriguez, Rodriguez has thus far been committed for 664 days and has 66 days remaining on section 1370(c)(1)'s two-year (730-day) limit.[15] Therefore, section 1370(c)(1)'s two-year limit has not been exceeded in this case.

Sixty-six days remain for the trial court to hold a restoration hearing under section 1372 and determine whether Rodriguez has recovered competence. Under our holding, the remaining 66 days will begin to run from the issuance of our remittitur in this matter. (See Cal. Rules of Court, rules 8.490(d), 8.272(b)–(d).) Any further continuances requested by Rodriguez's counsel should be assessed by the trial court in light of its responsibility to fulfill the Legislature's intent of limiting the period of detention due to incompetency (*Rodriguez*, *supra*, 15 Cal.5th at p. 506) while accounting for Rodriguez's individual interests. (See *Camacho*, *supra*, 15 Cal.5th at p. 395; see also § 1050, subd. (e) ["Continuances shall be granted only upon a showing of good cause."].) Further delays attributable to Rodriguez will toll section 1370(c)(1)'s two-year limit.

### III. DISPOSITION

The petition for writ of prohibition or other equitable relief is denied.

---

[15] Our calculation of a commitment period of 664 days is comprised of 119 days for Rodriguez's first commitment plus 253 days between the May 16, 2019 commitment order and the January 24, 2020 return to court, 271 days for COVID-19 related court delays (May 21, 2020–August 24, 2020 & September 21, 2020–March 16, 2021), and 21 days for the district attorney's requested continuance (August 31, 2020–September 21, 2020).

_____
                        Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H049016**
***Rodriguez v. Superior Court***

Trial Court:     County of Santa Clara

Trial Judge:     Hon. Eric S. Geffon

Counsel:         Brian C. McComas, by appointment of the Santa Clara County
                 Independent Defense Office, for Petitioner.

                 No appearance for Respondent.

                 Jeffrey F. Rosen, District Attorney, Alexandra W. Gadeberg, Deputy
                 District Attorney, for Real Party in Interest.

**H049016**
*Rodriguez v. Superior Court*